***********
The Full Commission has reviewed the prior Opinion and Award based upon the proceedings before Deputy Commissioner Baddour and the briefs before the Full Commission. Both parties waived their right to oral argument before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission AFFIRMS the Opinion and Award of Deputy Commissioner Baddour with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. The parties are subject to the N.C. Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and the named employer.
3. The defendant is a duly qualified self-insured, with Key Risk Management
Services as the servicing agent.
4. At the time of the hearing before the Deputy Commissioner on May 22, 2008, Key Risk Management Services was the servicing agent for the employer. Effective July 1, 2009, Corvel Corporation became the third-party administrator.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is forty-five years old and has worked for Bertie County Schools since September 1, 1993. In February of 2007, plaintiff was working in the dual positions of school bus driver for Colerain Elementary School and child nutrition assistant in the Bertie High School cafeteria.
2. On February 5, 2007, plaintiff alleges that she sustained an injury to her lower back while driving a school bus. Plaintiff has provided varying accounts of how she injured her back. On February 9, 2007, she told physician assistant Dana Clayton that she had been required to drive a different bus earlier in the week that caused her to twist her back. On February 16, 2007, plaintiff wrote on a Form 18 that at her last bus stop, as she went to pull the arm that opens the door, and she felt something pull in her lower back. On October 18, 2007, an amended Form *Page 3 
18 was completed stating that as plaintiff bent down to pick up a bottle that rolled under the accelerator pedal of the bus, she injured her spine. On December 19, 2007, a second amended Form 18 was completed stating plaintiff was driving a replacement bus and reached down to pick up a bottle that rolled under the accelerator pedal during a bus stop and then pulled the level to operate the arm of the bus. At the hearing, under direct examination, plaintiff stated that she bent down to pick up the bottle under the brake pedal, as opposed to the accelerator pedal, and then opened the bus door and felt something pull in her back.
3. After completing the bus route, upon returning to Colerain Elementary School on February 5, 2007, plaintiff briefly said hello to Principal Fannie Williams, her supervisor. Ms. Williams stated that plaintiff did not appear to be in pain, nor did she complain of pain. Plaintiff did not inform Ms. Williams of an injury to her back earlier in the morning.
4. While at Colerain Elementary School, plaintiff also spoke to Barbara Mitchell, the school secretary. Ms. Mitchell stated plaintiff did not mention injuring her back and did not appear to be in pain.
5. After leaving Colerain Elementary School, plaintiff reported to work at the cafeteria at Bertie High School. Plaintiff alleges that as she got out of her truck, she felt her back begin hurting. Plaintiff alleges that she told the manager, Mamie Bass, that her back was hurting that morning, and that she needed help completing her work duties. However, Ms. Bass stated that plaintiff did not indicate that she had injured her back on the bus earlier that morning.
6. Sara Irene Jeffreys is plaintiff's supervisor at the Bertie High School cafeteria. Jeffreys recalled that on the day in question, plaintiff came in "cheerful, talking, [and] laughing." Jeffreys gave plaintiff a message that she was supposed to take a random drug test that afternoon due to her bus driving status. After giving her the message, plaintiff stated that *Page 4 
her back went out and that she was in pain. Plaintiff did not state to Jeffreys that she had injured her back on the bus.
7. The drug test that plaintiff was directed to take on February 5, 2007 is mandated by the federal government to maintain a commercial driver's license. Plaintiff alleges she was unable to take the drug test because of back pain. Plaintiff alleges that around 11:30 a.m. she could no longer perform her duties and that her son and daughter helped her to her vehicle and that her daughter drove her to Colerain Primary Care, but she could not be seen.
8. Plaintiff alleges that when she arrived at Colerain Primary Care, she spoke to Shirley Perry, a nurse, who told her that she could not be seen because they were doing orientation and did not have the files in the office. Perry offered plaintiff an appointment for the following Friday. Plaintiff alleges she asked Perry if she could come in and take a urine test and Perry told her she could. Perry's testimony was that their facility does not administer drug tests.
9. Plaintiff alleges that she called Vernice Murphy, a transportation specialist for Bertie County Schools who was responsible for contacting employees regarding the administration of the test, and asked if she could take the drug test at Colerain Primary Care. Plaintiff alleges that Murphy told her it needed to be taken at the transportation department office. Plaintiff left Colerain Primary Care and went home. She stated she did not go take the drug test because no one could have helped her get from her car into the office to take the test, given her back condition.
10. Vernice Murphy testified she did speak with plaintiff by telephone on the afternoon of February 5, 2007. Plaintiff called to speak with someone about school bus payroll, and Murphy reminded plaintiff about the drug testing. Plaintiff informed Murphy she would not be coming in for the drug test because her back was hurting. Plaintiff did not tell Murphy that *Page 5 
she had injured her back on the bus. Murphy reminded plaintiff that a no-show for the test would be the same as a positive drug screening result, and that plaintiff would no longer have a "pocket card" or be able to drive the bus.
11. Because plaintiff did not take the drug test, she lost her Bertie County School Bus "pocket card" and her commercial driver's license, and therefore, was terminated from bus driving duties. Plaintiff could not be rehired as a bus driver because she no longer held a commercial driver's license. Plaintiff continues to work as a child nutrition assistant for Bertie County Schools.
12. Rickey Eley, principal of Bertie High School, recalled that around February 9, 2007, he took plaintiff's "pocket card" at the direction of the Bertie County Schools transportation office. Eley stated that on that date plaintiff did not mention injuring her back earlier in the week as the reason she could not take the drug test.
13. On February 9, 2007, plaintiff saw Dana Clayton, a physician's assistant at Colerain Primary Care, and reported that she had to drive a different bus earlier in the week that required her to twist her back.
14. On February 16, 2007, plaintiff filed a Form 18 in her own handwriting. She wrote that she had pulled a muscle in her lower back. Her bus had broken down at 7:15 a.m. at her first bus stop and the door would not open. She called the mechanic, who could not fix the bus and who called for another bus. She started her route and noted this was an older bus with a pull-out arm. On the last stop, she stated she went to pull out the arm and felt something pull in her lower back.
15. Plaintiff also completed the Form 19 and submitted the same to the employer to be signed on or about February 19, 2007. This was the employer's first notice that plaintiff was *Page 6 
claiming an injury to her back on February 5, 2007. Plaintiff wrote on the Form 19 that she was driving the bus and pulled the door open when she felt something in her lower back pull.
16. On April 2, 2007, the defendant-employer filed a Form 61 denying the claim for insufficient evidence to accept or deny the claim.
17. Plaintiff did not seek medical treatment for her back between February 9, 2007 and October 15, 2007, when she returned to Clayton at Colerain Primary Care. However, she had been seen by Clayton on several occasions during this eight month period for other medical conditions, but did not specifically complain of back pain on those visits.
18. On January 9, 2008, plaintiff returned to Clayton with complaints of back pain and radicular symptoms. This was plaintiff's first report of radicular symptoms, approximately 11 months after the alleged incident at work on February 5, 2007. An MRI was ordered that showed a herniated disc at L5-S1, an annular tear contacting the proximal right S1 nerve root sleeve, and degenerative joint disease at multiple levels.
19. Clayton did not offer medical opinion testimony to establish that plaintiff's herniated disc and other current back conditions are, more likely than not, causally related to her alleged incident at work on February 5, 2007. No other medical experts offered testimony in this matter.
20. On October 18, 2007, plaintiff, through counsel, filed an Amended Form 18 stating that she bent down to pick up a bottle that rolled under the accelerator pedal of the bus.
21. On December 19, 2007, plaintiff, through counsel, filed a second Amended Form 18 stating that while driving a replacement bus, she reached down to pick up a bottle that rolled under the accelerator pedal during a bus stop and then pulled the level to operate the arm of the bus. *Page 7 
22. The greater weight of the competent and credible evidence of record supports a finding that plaintiff did not sustain an injury by accident or specific traumatic incident on February 5, 2007. Specifically, upon consideration of the credible testimony of numerous other witnesses that conflicts with plaintiff's testimony, as well as plaintiff's inconsistent reporting of the events in question, plaintiff's testimony is not accepted as credible as to the history of the alleged incident on February 5, 2007.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The credible evidence of record fails to establish that plaintiff suffered an injury by accident or specific traumatic incident within the meaning of the North Carolina Workers' Compensation Act, and therefore her claim is not compensable. N.C. Gen. Stat. § 97-2(6).
2. The medical evidence of record fails to establish that plaintiff's herniated disc and other current back conditions are, more likely than not, causally related to her alleged incident at work on February 5, 2007, and therefore these medical conditions are not compensable.
3. Plaintiff failed to produce medical evidence establishing that she was unable to work in the same employment or other employment as a result of the alleged incident at work on February 5, 2007. In addition, plaintiff failed to establish disability during this period pursuant to any of the other methods allowed under North Carolina law. Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following: *Page 8 
 AWARD
1. Plaintiff's claim for compensation under the North Carolina Workers' Compensation Act must be, and the same is hereby, DENIED.
2. Each side shall bear its own costs.
This the ___ day of October, 2009.
 S/_______________________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/_______________________________ PAMELA T. YOUNG CHAIR
 S/_______________________________ BERNADINE S. BALLANCE COMMISSIONER